UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARL SWOBODA and<br>JUDY SWOBODA,<br><br>Plaintiffs,<br><br>v.<br><br>TRAVELERS PERSONAL<br>INSURANCE COMPANY,<br><br>Defendant. | CIVIL ACTION NO. 3:16-cv-00314<br><br>(SAPORITO, M.J.) |

## **MEMORANDUM**

This is an action by a married couple against their automobile insurer for breach of contract and for the statutory tort of bad faith. The plaintiffs, Carl and Judy Swoboda, live in Luzerne County, Pennsylvania. On August 23, 2007, Carl was involved in an automobile accident in which his vehicle was rear-ended by another driver while Carl was stopped at an intersection for a red light. As a result of the accident, Carl sustained severe back injuries, causing him to incur significant medical and related expenses, as well as permanent disability and ongoing pain and suffering.

At the time of the accident, the Swobodas were covered by a personal automobile insurance policy issued by the defendant, Travelers Personal Insurance Company ("Travelers"), Policy No. 9779728411011. The policy

included underinsured motorist coverage ("UIM") with a $500,000 limit of liability[1] and first-party medical expense benefit coverage ("PIP")[2] with $50,000 limit of liability.

The other driver was covered by an automobile policy with a $25,000 limit of liability, which was insufficient to fully compensate Carl for his losses. Therefore, the Swobodas tendered a claim for UIM benefits on or about October 1, 2008. They requested payment of the policy limits of $500,000 in UIM benefits.

The parties, through counsel, exchanged correspondence sporadically over the next several years, including requests by both sides for information or documents from one another, as well as scattered settlement negotiations. In February 2009, an independent medical examination of Carl was performed by an orthopedic surgeon at the request of Travelers. Based on this examination, Travelers discontinued

---

[1] The policy's stated UIM limits were actually $250,000 per person and $500,000 per accident, but the Swobodas elected to retain stacked limits and insured two vehicles under the policy, increasing the effective UIM limits to $500,000 in this circumstance.

[2] It is our understanding that first party medical benefits coverage is also commonly known as "personal injury protection" coverage, which explains why it was routinely referred to in the insurer's claims records by the acronym "PIP," which we shall adopt for use in this opinion as well.

payment of medical expenses under the PIP coverage in April 2011, more than two years later.

On March 19, 2013, the Swobodas commenced this lawsuit by filing a praecipe for a writ of summons in the Court of Common Pleas of Luzerne County, Pennsylvania, styled as *Swoboda v. Travelers Personal Insurance Co.*, Docket No. 3462-2013. On March 21, 2013, the writ of summons was served by the county sheriff upon Travelers by certified mail.

On September 15, 2014, the parties executed a release, in which the Swobodas released Travelers and "all other persons, companies, corporations and entities" from all claims for UIM or PIP coverage in exchange for payment of the $500,000 UIM limits and the remaining $39,346 in PIP limits. The release, however, expressly preserved the Swobodas' right to pursue any claims for bad faith, extra-contractual damages, or other damages arising from or relating to Travelers's handling of the Swobodas' UIM and PIP claims, including the instant action, then pending before the Court of Common Pleas for Luzerne County.

On December 1, 2015, the Swobodas filed their complaint in state court, which was served on Travelers on January 21, 2016. On February 22, 2016, Travelers removed the action to federal court on the basis of

diversity jurisdiction. On March 7, 2016, Travelers filed its answer here.

On October 2, 2017, the parties filed cross-motions for summary judgment. (Doc. 45; Doc. 47). The motions are fully briefed and ripe for disposition. (Doc. 46; Doc. 48; Doc. 49; Doc. 50; Doc. 51; Doc. 52; Doc. 55; Doc. 56; Doc. 57).

## I. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial

- 4 -

responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

"The rule is no different where there are cross-motions for summary judgment." *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008).

> Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

*Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968). Thus, "when presented with cross motions for summary judgment, the Court must consider the motions separately, and view the evidence presented for each motion in the light most favorable to the nonmoving party." *Borrell v. Bloomsburg Univ.*, 63 F. Supp. 3d. 418, 433 (M.D. Pa. 2014) (citation

omitted). "[E]ach movant must demonstrate that no genuine issue of material fact exists; if both parties fail to carry their respective burdens, the court must deny [both] motions. *Quarles v. Palakovich*, 736 F. Supp. 2d 941, 946 (M.D. Pa. 2010) (citing *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1023 (3d Cir. 2008)).

## II. DISCUSSION

The Swobodas' complaint asserts two separate causes of action. In Count I, they claim that Travelers failed to reasonably evaluate their claims for UIM and PIP coverage, failed to timely offer payment of the reasonable value of their UIM coverage claim, and failed to reasonably investigate their coverage claims, all of which constituted a common law breach of the contract of insurance between Travelers and the Swobodas, and as a consequence, they seek compensatory damages, punitive damages, interest, court costs, and attorney fees. In Count II, based on the same essential facts, the Swobodas claim that the handling of their UIM and PIP claims by Travelers constituted bad faith under 42 Pa. Cons. Stat. Ann. § 8371, and as a consequence, they seek compensatory damages, punitive damages, interest, court costs, and attorney fees.

Both sides have moved for summary judgment.

## A. The Travelers Motion for Summary Judgment

Travelers contends that it is entitled to summary judgment on both counts of the complaint. With respect to the Swobodas' breach of contract claim in Count I, Travelers argues that summary judgment should be granted in its favor because: (1) the contract claim is duplicative of the statutory bad faith claim; (2) the contract claim is barred by the release entered into by the Swobodas; (3) the contract claim is barred by the insurer's payment of the policy's UIM coverage limits in full; and (4) the Swobodas have failed to establish all elements of a breach of contract claim. With respect to the Swobodas' statutory bad faith claim in Count II, Travelers argues that summary judgment should be granted in its favor because the Swobodas have failed to adduce clear and convincing evidence that: (1) Travelers had no reasonable basis to deny or delay payment of the Swobodas' UIM and PIP claims; and (2) Travelers knew of or recklessly disregarded the lack of a reasonable basis to deny or delay payment of the Swobodas' UIM and PIP claims.

### 1. *Count I: Breach of Contract*

Travelers contends that summary judgment should be granted on Count I because the Swobodas' contract claim is duplicative of their

statutory bad faith claim advanced in Count II. But "section 8371 does not supply the exclusive cause for action for suing an insurer for breach of the duty to act in good faith . . . . [A]n insurer's bad faith refusal to settle a claim can [also] give rise to a contract cause of action." *Haugh v. Allstate Ins. Co.*, 322 F.3d 227, 236 (3d Cir. 2003). "[U]nder Pennsylvania law, an insured may bring both a common law contract action and a statutory action against an insurer for bad faith." *Cummings v. Allstate Ins. Co.*, 832 F. Supp. 2d 469, 472 (E.D. Pa. 2011); *see also Birth Ctr. v. St. Paul Cos., Inc.*, 787 A.2d 376, 390 (Pa. 2001) (Nigro, J., concurring) ("There are two separate 'bad faith' claims that an insured can bring against an insurer—a contract claim for breach of the implied contractual duty to act in good faith, and a statutory bad faith tort claim . . . under 42 Pa. [Cons. Stat. Ann.] § 8371.").

With respect to the same underlying conduct, the two causes of action are complimentary. Under § 8371, compensatory damages are not an available remedy for a statutory bad faith claim. *Cummings*, 832 F. Supp. 2d at 471 (citing *Birth Ctr.*, 787 A.2d at 386); *Simmons v. Nationwide Mut. Fire Ins. Co.*, 788 F. Supp. 2d 404, 408 (W.D. Pa. 2011) (citing *Birth Ctr.*); *see also* 42 Pa. Cons. Stat. Ann. § 8371 (providing for

recovery of interest, punitive damages, court costs, and attorney fees). But "under Pennsylvania law, an insured is permitted to bring a bad faith claim sounding in contract to recover those types of damages available in contract actions generally, including compensatory damages." *Id.* at 471 (citing *Birth Ctr.*); *see also Simmons*, 788 F. Supp. 2d at 410 ("Compensatory damages are available under Pennsylvania's common law of contracts, even where the action is brought under a bad faith theory."); *Scott v. Geico Gen. Ins. Co.*, Civil Action No. 3:11-1790, 2013 WL 3147637, at *7 (M.D. Pa. June 19, 2013) (punitive damages and attorney fees not available relief in contract actions).

In the alternative, Travelers contends that summary judgment should be granted on Count I because the Swobodas' contract claim is barred by the release they entered into on September 15, 2014. By the release's terms, however, the Swobodas only released their claims to UIM or PIP coverage. (Doc. 47-2). The release expressly preserved the Swobodas' right to:

> pursue any other claim or cause of action for Bad Faith, extra-contractual damages and other damages, arising from or otherwise relating to the handling of the aforementioned UIM and PIP claims, both Claim Number UKN5501, the above-referenced policy [(Travelers policy number 977972841 101 1)], effective

> February 28, 2007[,] to February 28, 2008, and/or motor vehicle accident of August 23, 2007, *including the action commenced by the Writ of Summons against Travelers and pending in the Court of Common Pleas of Luzerne County at Docket Number 3462 of 2013.*

(*Id.* (emphasis added)). That is this case. Thus, the release specifically preserved the Swoboda's right to pursue the contractual and statutory bad faith claims asserted in this lawsuit.

Travelers's final two arguments are related. It contends that the Swobodas have failed to establish the requisite elements of a breach of contract claim, and it contends that the contract claim is barred by Travelers's payment to the Swobodas of the full UIM limits, which is another way of saying that the Swobodas have failed to demonstrate a breach and resultant damages.[3]

"A party asserting a breach of contract claim under Pennsylvania law must demonstrate (1) the existence of a contract; (2) a breach of duty imposed by the contract; and (3) resultant damages." *Smith v. Allstate Ins. Co.*, 904 F. Supp. 2d 515, 521 (W.D. Pa. 2012). "In Pennsylvania, a duty of good faith and fair dealing is implicit in an insurance contract." *Simmons*, 788 F. Supp. 2d at 408; *Smith*, 904 F. Supp. 2d at 521 (quoting *Simmons*);

---

[3] The parties do not dispute the existence of a contract. *See infra.*

*Lomma v. Ohio Nat'l Life Assurance Corp.*, ___ F. Supp. 3d ____, 2018 WL 3186958, at *10 (M.D. Pa. June 28, 2018) (quoting *Smith*); *see also Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 91 (3d Cir. 2000) ("[Under Pennsylvania law,] every contract has an implied term that the parties will perform their duties in good faith."). "The covenant of good faith and fair dealing involves an implied duty . . . to exercise discretion in a reasonable way." *Lomma*, 2018 WL 3186958, at *10 (quoting *USX Corp. v. Prime Leasing Inc.*, 988 F.2d 433, 438 (3d Cir. 1993)); *see also Haugh*, 322 F.3d at 236 ("[W]here an insurer acts in bad faith, by unreasonably refusing to settle a claim, it breaches its contractual duty to act in good faith . . . .") (quoting *Birth Ctr.*, 787 A.2d at 389).

Here, the Swobodas contend that Travelers breached the implied covenant of good faith and fair dealing implicit in their automobile policy, but Travelers has countered with its contention that there are no resultant damages because it tendered the full UIM limits available under the policy.

> Generally, when an insurance company has paid the proceeds of an insurance policy, there can be no breach of contract claim because the insured has received what she was due under the policy and therefore has no damages. When a party sues for damages stemming from an insurer's bad faith in handling a claim, however, the

> damages sought may be different from the damages compensated by payment pursuant to the insurance policy and therefore may not be remedied by such payment. . . . "[W]here an insurer acts in bad faith, by unreasonably refusing to settle a claim, it breaches its contractual duty to act in good faith" and is liable for "the known and/or foreseeable compensatory damages of its insured that reasonably flow from the insurer's bad faith conduct."

*Smith*, 904 F. Supp. 2d at 521 (quoting *Birth Ctr.*, 787 A.2d at 389); *Koerner v. GEICO Cas. Co.*, Civil Action No. 3:17-cv-455, 2017 WL 2588598, at *8 (M.D. Pa. June 14, 2017) (quoting *Smith*). As this Court has previously explained, "it is the offer of *complete relief* that dissolves a plaintiff's interest in the claim and not simply the tender of policy limits." *Koerner*, 2017 WL 2588598, at *4 (emphasis in original). "[A] first party [insurance] breach of contract claim based on contractual bad faith survives payment of proceeds due under the policy where the plaintiff seeks damages different from those compensated by payment pursuant to the insurance policy." *Id.* at 8 (citing *Smith*, 904 F. Supp. at 520–23).

The question then is whether payment of the UIM limits offered the Swobodas complete relief, or if Travelers's alleged delay in tendering payment under the policy caused some other type of damages—for example, as recognized by the Supreme Court of Pennsylvania, emotional

distress damages. *See Birth Ctr.*, 787 A.2d at 385 ("The possibility cannot be ruled out that emotional distress damages may be recoverable on a contract where, for example, the breach is of such a kind that serious emotional disturbance was a particularly likely result.") (quoting *D'Ambrosio v. Pa. Nat'l Mut. Ins. Co.*, 431 A.2d 966, 970 n.5 (Pa. 1981)); *see also Smith*, 904 F. Supp. 2d at 523 ("Although emotional distress damages are generally not recoverable in actions for breach of contract in Pennsylvania, recovery for emotional distress damages may be possible where 'the breach is of such a kind that serious emotional disturbance was a particular likely result.'") (quoting *Birth Ctr.*) (citations omitted); *Kakule v. Progressive Cas. Ins. Co.*, No. Civ.A. 06-4995, 2007 WL 1810667, at *7 (E.D. Pa. June 20, 2007) (citing *Birth Ctr.*).

We have reviewed the parties' statements of fact and their responses thereto. We have reviewed the exhibits they have proffered. We have reviewed the parties' pleadings and their briefs. We have gone back and reviewed it all again. Nowhere, however, do we find any allegation or representation—much less evidence—that the Swobodas suffered emotional distress or any other compensatory damages as a result of the defendant's delayed payment of UIM and PIP proceeds. Notwithstanding

the considerable delay, on this record, the payment of full UIM and PIP limits to the Swobodas in September 2014 offered them complete relief.

Viewing the evidentiary record and all reasonable inferences therefrom in the light most favorable to the non-movants, the plaintiffs have failed to demonstrate the existence of a genuine dispute of material fact with respect to the element of damages. Accordingly, the defendant's motion for summary judgment will be granted with respect to Count I.

### *2. Count II: Statutory Bad Faith*

In Count II, the Swobodas have asserted a statutory bad faith claim, brought pursuant to 42 Pa. Cons. Stat. Ann. § 8371. This statute provides that:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take the following actions:
>
> > (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> >
> > (2) Award punitive damages against the insurer.
> >
> > (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. Ann. § 8371. Under Pennsylvania law,

> the term bad faith includes any frivolous or unfounded refusal to pay proceeds of a policy. For purposes of an

> action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith. Therefore, in order to recover under a bad faith claim, a plaintiff must show (1) that the defendant did not have a reasonable basis for denying benefits under the policy; and (2) that the defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim.

*Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218, 225 (3d Cir. 2000) (citations and internal quotation marks omitted). "These two elements—absence of a reasonable basis for denying a claim under the policy and knowledge or reckless disregard of the lack of such reasonable basis—must be proven by clear and convincing evidence." *Cozzone v. AXA Equitable Life Ins. Soc. of the U.S.*, 858 F. Supp. 2d 452, 458 (M.D. Pa. 2012) (citing *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997)); *see also Bodnar v. Nationwide Mut. Ins. Co.*, 660 Fed. App'x 165, 167 (3d Cir. 2016) ("Bad faith must be demonstrated by clear and convincing evidence, even on summary judgment."); *Lomma*, 2018 WL 3186958, at *11 (quoting *Bodnar*).

> Section 8371 encompasses a broad range of insurer conduct. For example, bad faith includes an unreasonable delay in handling claims, "a frivolous or unfounded refusal to pay, . . . [and] a failure to communicate with the insured." "Bad faith also occurs when an insurance

> company makes an inadequate investigation or fails to perform adequate legal research concerning a coverage issue."

*Smith*, 904 F. Supp. 2d at 524 (citations omitted, alterations in original).

Here, the plaintiffs have pointed to an extraordinarily long, six-year delay in payment of benefits. Each side argues that this delay was due to the dilatory conduct of the other. The plaintiffs argue that Travelers's initial rejection of the opinion of Carl's treating neurosurgeon with respect to causation and permanence was unreasonable because it elevated its own non-expert claims handler's opinions as to causation, severity, and permanence of Carl's injuries over that of his treating neurosurgeon. They argue that Travelers's ultimate reliance on an examining orthopedic surgeon's opinion over that of the treating neurosurgeon was likewise unreasonable, and that the delay and course of conduct concerning the termination of medical expense benefits was unreasonable and indicative of self-dealing. They argue that the insurer failed to perform a reasonable and timely investigation, and that it had sufficient information to justify the Swobodas' UIM claim at the earliest stages of the investigatory period.

Viewing the evidentiary record and all reasonable inferences therefrom in the light most favorable to the Swobodas, the non-movants,

we find that a reasonable jury could, by clear and convincing evidence, find that the defendant's course of conduct with respect to the handling of the plaintiff's UIM and PIP coverage claims did not rest on a reasonable basis, and that the defendant knew or recklessly disregarded the lack of a reasonable basis. Accordingly, the defendant's motion for summary judgment will be denied with respect to Count II.

**B. The Swoboda Motion for Summary Judgment**

The Swobodas have likewise moved for summary judgment. Their motion has not distinguished between their contractual and statutory claims, focusing instead on the ultimate and common issue of bad faith—whether Travelers had a reasonable basis for its claims handling and whether it knew or recklessly disregarded a lack of reasonable basis for denying or delaying payment of the plaintiffs' claims for coverage.

Based on the foregoing discussion, and viewing the evidentiary record and all reasonable inferences therefrom in the light most favorable to Travelers, the non-moving party, we find that a reasonable jury could find that the defendant had a reasonable basis for its course of conduct with respect to the handling of the plaintiff's UIM and PIP coverage claims, or that it did not know or recklessly disregard a lack of reasonable

basis. Accordingly, the plaintiff's motion for summary judgment will be denied.

## III. CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment (Doc. 47) will be granted in part and denied in part, and the plaintiff's motion for summary judgment (Doc. 45) will be denied. Judgment will be entered in favor of the defendant with respect to Count I (breach of contract), and Count II (statutory bad faith) will be set down for a jury trial.[4]

An appropriate Order follows.

Dated: September 28, 2018

*s/ Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

---

[4] Although the insurance bad faith statute uses the term "court," and Pennsylvania state courts have held that there is no state-law right to a jury trial in statutory bad faith actions, *see Mishoe v. Erie Ins. Co.*, 824 A.2d 1153 (Pa. 2003), both the Third Circuit and this Court have previously held that the Seventh Amendment confers a right to a jury trial in bad faith actions in federal court. *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 236 (3d Cir. 1997); *Fahy v. Nationwide Mut. Fire Ins. Co.*, 885 F. Supp. 678, 679 (M.D. Pa. 1995). The plaintiffs timely demanded a jury trial in the caption of their complaint. (Doc. 1-4).